[Civ. No. 6286. First Appellate District, Division One.—July 18, 1928.]

ELIZABETH RIEDY et al., Appellants, v. GEORGE M. BIDWELL, Respondent.

CHARLES COOK, Appellant, v. GEORGE M. BIDWELL, Respondent.

L. E. Dadmun for Appellants.

Adam Thompson and Renwick Thompson for Respondents.

CAMPBELL, J., *pro tem.*—Two actions were brought, one by Elizabeth Riedy and Tom Riedy, husband and wife, against George M. Bidwell, and the other by Charles Cook against George M. Bidwell. The former is to recover $12,250.92, based upon two causes of action, one for services alleged to have been rendered by plaintiff Elizabeth Riedy and the other on an assigned claim of E. M. Tinney, both causes of action being based upon the same ground.

The latter action is brought to recover $6,125.46 upon the same theory as is set forth in the action of Elizabeth and Tom Riedy against George M. Bidwell.

The contract alleged is the same in the case of Elizabeth and Tom Riedy against Bidwell; in the assigned cause of action by Tinney to Elizabeth Riedy, and in the action of Cook against Bidwell, the contract alleged being that on or about February 1, 1919, defendant entered into an agreement of employment with Elizabeth Riedy, Charles Cook, and E. M. Tinney that if they would stay and help him run and manage the business, he would pay and give to each of them the amount they were then receiving monthly, and in addition thereto he would pay and give to them all net profits which they would earn in the business over and above six per cent on the investment, after deducting all the expenses connected with the running of the business. The cases were not consolidated but were by stipulation tried together and both appeals are presented under one record in conformity with the trial of the case and pursuant to stipulation.

This is the second trial of the actions. In the first trial the court found in favor of plaintiffs upon the contract but held the contract void. On appeal, however, the appellate court held the contract valid and reversed the judgment. At this trial and before any evidence was introduced the plaintiffs contended that the only issue the court had a right to try was the amount due under the contract; that the other issues had been determined by the former trial court, and the only issue undetermined was the amount due, and the court could not under the law of the case determine whether or not there was any contract, as that had already been determined in favor of plaintiffs. The court overruled plaintiffs' contention, denied their motion to limit the issues to the amount due and ordered the issues at large to be tried. The second trial was before a jury, which rendered a special verdict in favor of defendant George M. Bidwell in each case, and which special verdicts were adopted by the court in its findings, and judgments were rendered thereon in favor of defendant.

There was a stipulation entered into between counsel for the respective parties that so far as the jury was concerned there was only one issue to be presented to them,

and that, whether or not any contract was entered into; that the question whether or not anything is due under the contract, and if so, how much, would be directed to the court entirely and by the court decided; and by consent the two special verdicts, which were answered in favor of the defendant, were submitted to the jury.

Appellants urge that the court erred in setting the case at large and permitting evidence to be received on the question as to the existence of a contract; that there was no evidence so as to materially change the issue to entitle the court to put the case at large; the court erred in instructions to the jury; the court erred in holding the contract sued on one entire contract; the court erred in permitting the introduction of the letter written by E. M. Tinney and permitting Tinney to testify over objections of plaintiffs; the testimony of Woodruff was inadmissible against appellant Riedy, and that the motion of appellants for directed verdict should have been granted.

The first two contentions regarding setting the case at large and that there was no evidence to materially change the issue so as to entitle the court to put the case at large, are without merit. ■ In reversing the case (*Riedy* v. *Bidwell*, 70 Cal. App. 552 [233 Pac. 995]) the court merely ordered "the judgment is reversed." The effect of this unqualified reversal was to remand the case for a new trial on all the issues presented by the pleadings (*Falkner* v. *Hendy*, 107 Cal. 49, 54 [40 Pac. 21, 386]), the decision upon the former appeal being the law of the case when the evidence does not warrant a different conclusion (*McGraw* v. *Friend & Terry Co.*, 133 Cal. 589 [65 Pac. 1051]; *Adams* v. *Thornton*, 5 Cal. App. 455 [90 Pac. 713]). ■ The rule of law of the case has no application to facts, and it is settled beyond controversy that the decision of an appellate court on questions of fact does not become the law of the case (*Mattingly* v. *Pennie*, 105 Cal. 517 [45 Am. St. Rep. 87, 39 Pac. 200]; *Moore* v. *Trott*, 162 Cal. 273 [122 Pac. 462]). ■ Here, however, it cannot be contended that the findings of the trial court are the same as the findings of the court on the former trial, and no assignment being made that the evidence is insufficient to support the findings and our attention not being directed to the fact of the insufficiency of the evidence, this court

will presume that such findings find support in the evidence. "The facts of this case must control the findings, and the court found the facts to be different in the second trial from the facts at the first trial, and by the facts as now found must we be guided" (*Stockton etc. Wks.* v. *Glens etc. I. Co.,* 121 Cal. 174 [53 Pac. 569]). ■ There was unquestionably some evidence introduced at the second trial which was lacking at the first, particularly the testimony of Jess Woodruff as to a conversation he had with plaintiff, Charles Cook, about a week before the second trial and which could not therefore have been given at the first trial, in which Cook stated to him: " 'Well, Mrs. Riedy wanted me to see you and see if you could not help us out.' It is pretty hard to remember—there was something, I think about Jim Young came up—'Jim had gone the limit to help us put over the contract, but of course, there was not any contract, but we put it over just the same' or something to that effect. Q. Do you remember anything else that was said by either you or Cook? A. I said I could not do anything like that, my evidence had already gone in in the last trial. Q. Did he reply to that? A. He says: 'Couldn't you change your evidence and be mistaken in some of it in regard to this bonus and say there was a contract,' and I says, 'No, I couldn't do that.' '' There was also a letter written by E. M. Tinney—who assigned his claim to plaintiff Elizabeth Riedy—to defendant, which was not offered in evidence at the first trial. This letter had reference to the meeting of Riedy and his wife and Cook and Tinney at the office of Attorney Dadmun, when they were all present and consulting regarding bringing suit. In the letter appears this statement: "I told him I didn't know anything to bring suit for."

■ As to appellants' contention that the court erred in holding the contract sued on one entire contract and not divisible, it may be said that from a reading of the contract alleged it appears that there is in fact only one contract. They bear the same date—February 1, 1919— and each alleges that if Elizabeth Riedy, together with Charles Cook and E. M. Tinney, would stay and help defendant run and manage his business he would pay and give to Elizabeth Riedy, Charles Cook, and E. M. Tinney the amount which they were then receiving and in addi-

tion thereto he would give them all the net profits which they could earn in the business over and above six per cent on the investment. The court, adopting the special verdicts of the jury, found that no contract of any character was entered into, and there being no contract, it is immaterial whether the contract as alleged is entire or divisible.

It may likewise be said that there is no merit in appellants' contention next set forth that the court erred in permitting the introduction of the letter written by E. M. Tinney and permitting Tinney to testify over the objection of plaintiffs. Tinney was an assignor of plaintiff Elizabeth Riedy, having assigned his claim to her for the purpose of bringing suit, and therefore his statements against his interest are admissible in a suit by the assignee on his assigned claim. In *Bollinger* v. *Bollinger*, 153 Cal. 190, 195 [94 Pac. 770, 772], in a case similar to the one presented here, the court says: "His testimony, if true, amounts to an admission by David that he had no contract with George, and this drags down the very foundation of the cause of action here pleaded, and the evidence was material and important," and section 1870 of the Code of Civil Procedure provides: "In conformity with the preceding provisions, evidence may be given upon a trial of the following facts . . . Subdivision 5. After proof of a partnership or agency, the act or declaration of a partner or agent of the party, within the scope of the partnership or agency, and during its existence. The same rule applies to the act or declaration of a joint owner, joint debtor, or *other person jointly interested with the party.*"

The court did not err in admitting the testimony of the witness Woodruff against appellant Riedy above quoted, for, as has been said, the allegations of the complaint show that there existed a community of interest in the contract alleged, between appellants Riedy and Cook, and Tinney, the assignor of appellant Elizabeth Riedy (*Tracy* v. *Colby*, 55 Cal. 67, 70; 1 Greenleaf on Evidence, 172; Code Civ. Proc., sec. 1870).

Appellants complain that the court erred in instructing the jury. The instruction complained of is: "You are further instructed that a witness is presumed to speak the truth. This presumption, however, may be

repelled by the manner in which he or she testifies, by the character of his or her testimony or by evidence affecting his or her character for truth, honesty or integrity (by the way, that portion of the instruction should be omitted because there has been no attack on any of the witnesses in this case in that regard) ; or his motives or by contradictory evidence, or by his interest in the matter if any, and the jury is the exclusive judge of his or her credibility.''

Appellants urge that the remarks of the court made parenthetically destroy the entire instruction, and that the further vice of the instruction is to take away the right of the jury to determine the testimony for themselves and arrive at the facts. All that the court eliminated from the instruction by its parenthetical remark was ''or by evidence affecting his or her character for truth, honesty or integrity,'' and as there was no evidence introduced that the character of any witness for truth, honesty or integrity is bad, it was not the duty of the court to instruct the jury on this question.

Appellants contend that as evidence was offered to contradict the statements made by the witnesses Tinney and Woodruff, the effect of withdrawing from the jury that portion of the instruction stating that the presumption that a witness speaks the truth may be repelled ''by evidence affecting his or her character for truth, honesty or integrity'' had the effect of stamping the testimony of Tinney and Woodruff with truth and verity. We do not agree with this contention. Furthermore, the court instructed the jury: ''A witness may also be impeached by evidence that he has made at other times statements inconsistent with his present testimony as to any matter material to the cause on trial,'' and also: ''The jury are the sole and exclusive judges of the effect and value of evidence addressed to them, and of the credibility of the witnesses who have testified in the case, and the character of the witnesses as shown by the evidence should be taken into consideration for the purpose of determining their credibility, and the fact as to whether they have spoken the truth, and the jury may scrutinize, not only the manner of witnesses while on the stand, their relation to the case, if any, but also their degree of intelligence.''

From what has been said it follows that there is likewise no merit in appellants' final contention that the motion for a directed verdict should have been granted.

The judgments are affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 13, 1928.

All the Justices concurred.